Good morning, your honors. My name is Mitchell Bisson, and I represent the appellant Rudy Rivera, and I would like to reserve five minutes for rebuttal. All right. I'll try to help you out, but keep your eye on the clock as well. Of course. Thank you. Your honors, the question in front of you today is whether, in the face of repeated requests for assistance from a detainee, does a governmental contractor who has any obligation whatsoever to his detainees to prevent over-detention? The district court down below said no. There was nothing they could do to prevent this or to assist the appellant. I'm asking your honors to reverse that decision and remand this back down below for further proceedings. The appellant Rudy Rivera was arrested for allegedly being involved in a drug operation involving marijuana. He was arrested in California, at which point he was transported to the District of Nevada in order to be brought for his initial appearance. Once Mr. Rivera was transported to this private prison facility in Nevada, he was placed into administrative segregation where he remained for the next 355 days without ever being brought in front of a judge. As soon as he was initially or finally brought to court, he was immediately released from custody and the charges were dismissed shortly thereafter. While he was there, Mr. Rivera was continually dissuaded by CoreCivic, the only entity, the only people he saw, from getting further help. He was continually told, the feds will come get you when they come get you. I believe Mr. Rivera testified to speaking to numerous staff members, case managers, corrections officers, etc. The District Court, well let me backtrack a minute, CoreCivic unbelievably argued that it has no fault and no liability. Again, there was nothing they could do. The District Court- Counsel, in Nevada, is false imprisonment an intentional tort? It is, Your Honor. Okay, so false imprisonment is an intentional tort. What is the intentional tortious conduct that makes CCA or CoreCivic liable for false imprisonment? So I believe it's their complete deliberate indifference and their lack of having any policies arises to the level of intent. Because you agree that even if they wanted to release your client, they had no power to do that, correct? I don't agree wholesale with that, Your Honor. In fact, the contract CoreCivic has with the U.S. Marshals Service requires them to take some steps to present it with a situation such as this. Okay, but that wasn't my question. My question was, do you agree that they could not release your client or themselves transport your client to court? I do not agree with that, Your Honor. Okay, so what was their possible authority for letting the client out? So their contract says that they have, when they're facing competing standards, looking at state law, federal law, local laws, case law, and constitutional law, it says the most stringent standards should apply. So when they're getting repeat information that they're in effect violating a detainee's constitutional rights and have failed to follow Nevada law, which requires them to bring him in front of a magistrate without undue delay, I believe that contract itself provides them that authorization. So if they decided, for example, that the federal magistrate or the federal judge acted unlawfully in entering an order detaining your client, that they would have an independent obligation to release him? I believe they would have an obligation to, pursuant to the contract, to contact what is defined as a contracting officer for the U.S. Marshals Service and arrange for him to either be released or brought to court for that order to be fixed. If we don't agree with you, counsel, on that point, that is, if the panel believes that the failure to release can't give rise to any liability under any of your causes of action because there's no authority on Korsavik's part to release your client, then what acts would meet the extreme or outrageous conduct element of the false imprisonment claim? Can you sum that up, setting aside the failure to release? Yeah, I believe it's the situation where Mr. Rivera told them countless times that he had not been brought to court, and when they're effectively telling him, you don't have to worry about that, they're going to get you whenever they come get you, just wait. I believe that is extremely outrageous and intentional, again, especially in light of the fact that Korsavik was the only people Mr. Rivera had face time with. He wasn't, there wasn't a U.S. Marshal sitting across from him, it was always Korsavik staff coming in and out of the facility. So the district court below, as well as Korsavik, hinges their case on the Brooks case. And they argue that Brooks is the more similar case versus Oviatt. In Oviatt, the Ninth Circuit allowed liability against a jailer for over-detention. I believe that Brooks not only is easily distinguishable from this case, but Brooks actually, in their analysis, shows why Oviatt is more applicable. And without Brooks, I think this whole case hinges on factual disputes left for a jury. So as to Brooks, Brooks involved a 12-day over-detention versus 355 days for such as Rivera. Oviatt was 155 days, so again, looking at the time of over-detention, Oviatt is more similar. But more significantly, Brooks hinged their case on two things. Number one, they said, hey, in Brooks, there's no state law prohibiting this jailer from releasing him. Here in Nevada, where Ms. Rivera was detained, there is no similar statute. In addition, Brooks was very clear that the difference here was, in Brooks it involved a U.S. Marshal, I guess, charging entity and a county jail. And while Court Civic likes to point to the fact that these are two different entities, same as the case here in Rivera, it wasn't the fact that there were different entities the court focused on. The court focused on the lack of linkages. The court said there was no linkages between the U.S. Marshal Service and the county jail. We learned here in Rivera, the linkages abound. There was, we're talking a federal entity, U.S. Marshal Service, and the jailer being their independent contractor. This isn't a completely different jurisdiction that has other detainees. Court Civic admits that during this time frame, their facility only housed U.S. Marshal Service detainees. Counsel, for your negligence claim, if the facts were that Court Civic contacted the marshals and said, you know, we've got this guy here 100 days, 200 days, 300 days, normally people go to court in two days, but here we got somebody who's never been to court, what's going on? And the marshal said, you know, not your job, you don't worry about it, he's there, you just keep him, you leave it to us. Would your client in those circumstances still have a negligence claim against Court Civic for their conduct? You know, I hadn't actually thought about that, but I do believe that would lessen their liability. I'm sorry, I missed your word, counsel, sorry. I do believe that would lessen their liability because they would have then complied with what they were required to do under the contract. They would have heeded my client's request to, hey, contact them, put somebody on notice of this. And again, looking at excerpts of record, page 129 in volume two, which is the Court Civic contract, it says specifically, all services and programs shall comply with the PWS and all applicable federal, state, and local laws. And it goes on and also mentions it should follow case law and court orders. Counsel, I didn't notice anywhere in the contract, but it's a long contract and I might have missed it, but I didn't see any provision in there barring third-party beneficiaries of the contract. Did you argue below at all that your client was a third-party beneficiary of the contract? I don't believe that was one of the arguments. It was more of a negligence based on their failure to comply with this with the US Marshals Procedure. So again, Court Civic likes to claim that they could do nothing, but again, I submit their contract required them to contact the US Marshals Service. It also required them to assist detainees in making contact with attorneys. Page 154 of the excerpts of record says, detainees shall be assisted in making confidential contact with attorneys and authorized representatives. So again, while Court Civic likes to say there was nothing they could do, they were under a duty pursuant to this contract to assist, to contact the Marshals Service. In the District of Columbia in Wormley v. United States, which I cited in my brief, the court rejected this exact argument by Court Civic, that there was nothing they could do based on a contract. I know you wanted to stay some time. I just wanted to remind you of that. Just one final quick point before I say the rebuttal. I would also like to point out that Court Civic concedes that the restatement of courts is applicable. However, they claim they just had no notice of Mr. Rivera's detention. With that, I'll leave the rest for rebuttal. Good morning. Kevin Nguyen on behalf of a police defendant at Court Civic. Can you hear me? Yes. When the District Court found itself at the crossroads of the estate of Brooks and Fovead, it chose the correct path in calling Brooks, because this case is a straightforward application of the Hoonigan Group. Planoff was a federal pretrial detainee in the sole legal custody of the United States Marshals Service. Court Civic had physical custody, but it was not responsible for Planoff's arrest. His arraignment or otherwise ensuring that his legal custody was valid. Thus, Court Civic could not simply release Planoff absent a direction from the United States government. And indeed, Court Civic had even less authority than the county defendant in Brooks because it was not a government entity. And therefore, it lacked the state's police powers. Counsel, I'm going to start with the negligence claims. The District Court said, because defendant could not act for the United States or contravene the Marshal's decision, they neither had nor breached the duty to Planoff. I don't see how that's even conceivably correct. I mean, first, you would agree that in many contexts, your client had a duty to Planoff, right? Our duty to... Like for example, you couldn't have like a wet floor that you had him walk on. If he fell down, he could sue you because you had a duty to maintain a safe premises, right? Correct, Your Honor. So why wouldn't there be a duty to act with due care? And in a circumstance where normally somebody goes to court in 48 hours and they're here for 300 days, why wouldn't the duty of due care include telling the Marshals, hey, what's going on with this guy? Well, Your Honor, the duty that CoreCivic has with respect to detainees at the facility are duties that pertain to the physical custody of the detainee. So CoreCivic would have the responsibility to provide for their safety, their security and their basic needs while detained at the facility. And where does Nevada law say that? Well, it's a duty that arises under the common law, but there is no duty... That duty didn't arise here. Well, plaintiff points to the restatement, section 314A for the common law duty of a custodian to maintain, to exercise ordinary care in the custody and exercise of custody over a plaintiff. But CoreCivic did meet that duty here. Counsel, what if it had been three years rather than 330 days? Still no duty? The duty does not extend to the legal custody of the detainee. What about 30 years? It still does not pertain to the legal custody of the detainee. So basically, in your view, CoreCivic would not be liable to plaintiff where here 330 days, but even if it had been 30 years and the marshals just lost him and plaintiffs and CoreCivic never said anything to the marshals and he'd been there for 30 years and died, there would be no liability by CoreCivic. Well, that wouldn't happen, Your Honor, because CoreCivic does have a duty, a contractual duty under the United States Marshal Service Agreement to keep track of the arrival and release date. But that duty... Let me ask you this. To follow up on Judge Bennett's point, Mr. Wynn, you rely essentially on Brooks. But Brooks arose in a different context with very limited facts that are quite different, but starkly different from the facts presented here and causation has a lot of factual issues that normally go to the jury. So can you think of any factual circumstances where CoreCivic would have liability, where the facts alleged are sufficient to put the case before the jury? Or is your position that, well, there can be no claim ever based on prolonged detention because our duty is just that limited? Well, under different facts, perhaps, Judge Wynn, that show CoreCivic intentionally disregarded pleas for help, perhaps. Okay. So there could be factual circumstances that would be sufficient to survive summary judgment, correct? Correct. But those factual circumstances don't exist in this case because plaintiff... Right? So theoretically, to pick up on Judge Bennett's example, let's say the overdetention was 36 months coupled with affirmative misrepresentations by CoreCivic employee. For example, well, you can't talk to the marshals. I'm giving you hypotheticals here, so I don't want you to jump in and say, well, those aren't our facts. But let's say it's 36 months of overdetention, no initial arraignment with the prisoner repeatedly bringing that fact to the attention of the employees. And the employers say, well, there's not much we can do about it because you're not entitled to a hearing until 36 months have passed. And so just sit tight. If we were under that circumstance, would that be enough to go to the jury on the causation and duty issues? Perhaps if there was evidence of anything that CoreCivic did to impede the ability of the detainee to get the help that the detainee desired. And that if it was even aware of the fact that a detainee had not been arraigned. But there was no reason for CoreCivic to know on this record that... There are factual allegations that have to be construed in the plaintiff's favor at this point that approaches the hypothetical that I've just given you. What he's saying in his deposition is that he repeatedly brought to CoreCivic's employees' attention that he had not been to court. And he was repeatedly told by various folks, including case managers, that the marshals will get to you when they get to you. Something along those lines. So how is that different than making representations that basically misled him into thinking that he was not entitled to a prompt arraignment? Well, this case survived the motion to dismiss the case because the plaintiff's theory was that CoreCivic threw him in segregation, threw him in the hole, and concealed the fact that he had not been arraigned. But the evidence did not show that at summary judgment. All the plaintiff pointed to was the statement of two employees. There was a case manager, Linda Mood, with whom he had conversations where he mentioned that he had not been to court or had not been arraigned. But he admitted that he never specifically asked her for help in getting the contact information for the public defenders, an attorney, or the court. But counsel, I'm looking at his testimony at pages 66 and 67. How many times did you speak to case manager Linda Mood? And when, I assume when you say this issue, you're referring to getting an attorney and a court date, correct? Yes. I explained to her, like, I still haven't been to court. You know, I don't know what's going on. So when she would come to collect those courses approximately every two weeks. I don't understand how that doesn't qualify as a disputed issue of fact on exactly what Judge Nguyen was talking about. Well, he admitted, though, that he never specifically asked for the information that he needed. Sure, but you have an explanation for that. You have an explanation for that. Why didn't you ask for the public defender sooner? Or something along those lines. I didn't know because I was just told to wait. So I didn't assume. I'm just waiting for the feds to come pick me up and take me to court. I was being told by staff that's paid to do so, to take care of these inmates, not to do anything. So, should be enough to go to trial at least. The jury could reject his claim and accept your version that he should have been more specific in his inquiries. But we're talking about summary judgment here. Well, I disagree, Judge Nguyen, because that's a vague and conclusory assertion that is also inadmissible hearsay contradicted by case manager Lindenwood's own testimony and not supported by any other evidence. How can it be? I'm sorry, Judge Harpo. I was going to say that if it's contradicted by other testimony, isn't that at the heart of what a disputed fact is? Isn't that what we have juries to decide? Well, not if a reasonable finding cannot be reached in the plaintiff's favor. So why isn't it reasonable to believe him that he talked to your employees and was told what he says he was told? Why wouldn't that be a logical conclusion if that's what the jury wanted to believe after hearing the testimony? There was overwhelming evidence in the record that he did not ask. Case manager Lindenwood testified that she did not recall any such testimony that her practice and the practice of the facility was to provide contact information for an attorney if a detainee asked. But if a detainee were to ask about criminal matters, her job was to provide for the rehabilitation programming of detainees and not involve any criminal. I agree that if the jury agrees and believes your testimony of your employees, that you will prevail at trial. But here we're at summary judgment and we have two witnesses testifying differently. Isn't that what a jury is designed to do, is to resolve who's telling the truth? Well, even if the jury were to believe his version of the events, it would still be insufficient to support a negligence against a negligence claim against CoreCivic because this is a case manager. She's a low-level employee and there was no there was no respondent superior claim. So anything that she allegedly failed to do could not be imputed to CoreCivic to impose vicarious liability. He could not raise a respondent superior claim in opposition to motion for trial. Hold on a second. I think I lost your sound, Mr. Nguyen. Hold on. Go ahead. Can you hear me, Judge? Yes. My point is he did not plead a respondent superior claim. He could not raise one in opposition to defeat summary judgment to the extent he attempted to bring one for the first time. But corporations can only act through people, right? It can only act through policymakers or a practice customer policy. And here all we have is the alleged statements of two employees. We have case manager Linda Mood and a detention officer, neither of whom is involved in criminal matters. Counsel, I want to pivot before you run out of time. I have a question with regard to the false imprisonment claim. I'm reading the Nelson case from the Nevada Supreme Court. And they talk about, you know, bears the burden of proving that the delay following his arrest was unlawful. A few hours may constitute an unnecessary delay. Whether the defendant proceeded with due diligence depends on the circumstances of the particular case. Why, if we applied Nevada law, unless this has somehow been overruled in the false imprisonment context, why wouldn't that get the plaintiff here to the jury based on core civic not doing anything about his complaints or not proactively asking the marshals to look at it? Isn't this use of the words due diligence suggesting that even in circumstances where the marshals had the ultimate authority, the jailer can still be liable? If core civic had any obligation to keep track of his arraignment or if there was evidence in this record to show that core civic impeded his ability to get the assistance he needed for an arraignment, perhaps under those circumstances, there might be enough to find intentional or purposeful conduct. But as you suggested earlier, Judge Bennett, there's insufficient evidence in this record to rise to that level of culpability which is required for false imprisonment. Is core civic compensated on a per diem basis? The evidence in the record, Your Honor, is that core civic was paid a fixed price and Warden Collins testified that it was a fixed price that the allegation that core civic was somehow able to profit from any extra day of his prolonged detention was just unfounded. And there was no evidence to support that theory or accusation. You earlier, and I want to make sure that I understand your answer, indicated that core civic does have a tracking system to track admittance dates and release dates. Did I understand your answer correctly? Yes, Judge Flynn, that's correct. It doesn't track any other information, is that right? No, and that's precisely because it does not have legal custody over the detainee and there would be no reason for it to do so. And that the authority that the United States Marshal Service has, the legal custody or legal authority that the United States government had over the detainee was not delegated to core civic under the contract. All right, thank you. Thank you. Just a quick point on the intentional infliction of emotional stress. Actually, you're out of time. Oh, I am? Sorry, I'm showing 41 seconds. Thank you, Your Honors. I just want to touch on a couple of topics brought up. I think it's important that, you know, core civic has conceded that, you know, there are times when a duty arises. It seems like they're saying only when it's the safety and security of detainees. Your Honors, I submit that over-detaining somebody does affect their safety and their security. As well, they admitted that if the facts show they intentionally disregarded pleas for assistance or that they impeded his ability to get an attorney a court date, that there could be liability. Again, in a light most favorable to the appellant here, that did occur. Rudy Rivera testified countless times. He talked to more than just a case manager, Linda Mood. There was Corrections Officer Barbier who he had very intimate conversations with. He talked to, I believe there was case manager Chisholm. There were multiple employees he spoke with. All it would have taken, Your Honors, was one phone call, one email, any form of contact with the marshal service. In fact, core civic admits that they had access to the marshal. A contract monitor came in and spoke with core civic higher ups on a somewhat frequent basis. Despite core civic claiming that a contract monitor would go cell to cell, I believe Rivera testified that wasn't the case, specifically for those in segregation. So again, I just think this is a lot of disputed facts that is left for a jury, especially with core civic at this point conceding that there is potentially a duty. I also think it's a little disingenuous to testify that nobody could believe Mr. Rivera's testimony about asking for assistance. I think it's unreasonable to believe that Mr. Rivera sat in jail for almost an entire year, missing out on his daughter's first day of kindergarten, his son's first steps, his girlfriend is out there working multiple jobs to try to support the family, couch surfing. I think it's completely unreasonable to think that he was just sitting there. Doesn't the record reflect that he made 200 phone calls? Is that what I saw? That is correct, Your Honor. And did he have a responsibility to seek assistance or help? And then, wouldn't his failure to seek that assistance through phone calls at least be some evidence that maybe he wasn't actively trying to get to take action to remedy for himself? Yeah, I think any potential, I guess, contributory negligence is, I would say, left up to the jury to decide how much fault he is, if any. Again, I find it hard to believe that, you know, there should be a standard that requires an inmate or a detainee to take multiple steps to try to force their way out. Because the flip side of this is that, you know, in the case of Civic, throughout their depositions, they talked about, you know, hey, Mr. Rivera, he was a good inmate. He didn't cause any trouble, didn't have any problems. Now, I would submit that if he was, you know, causing more of an uproar to try to force his way out of this jail, poor Civic probably would have taken, you know, I would assume, some type of discipline action, or they wouldn't have accepted that too well. So, again, I don't believe this court should allow poor Civic to skirt liability for their complete and utter failure to follow Nevada law, the Constitution, especially when this contract they have requires them to reach out. Poor Civic wants to have its cake and eat it too. They want to rake in a ton of money owning and operating a private prison facility for the U.S. government but wants to have no liability whatsoever for locking an innocent man up for 355 days. You're over time, counsel. But we've got your argument. Thank you to both sides for your argument today. The matter is submitted for a decision by the court. Thank you.
judges: Nguyen, Harpool, Bennett